78   73
178s 351

## Illinois Steel Co. v. Henry Bauman.

1. MASTER AND SERVANT—*Risks of the Employment.*—The rule of law that the servant assumes the usual and ordinary risks of his employment is so well established and elementary that no discussion or citation of authorities need be had.

2. SAME—*What Are Not Ordinary Risks.*—Explosions of slag when put into a mould in a smelting furnace are not one of the ordinary incidents of the work of a moulder.

3. FELLOW-SERVANTS—*Injuries by, etc.*—Where one servant is injured by the negligence of another servant, where they are directly co operating with each other in a particular business in the same line of employment, or their duties are such as to bring them into habitual

association, so that they may exercise a mutual influence upon each other promotive of proper caution, and the master is guilty of no negligence in employing the servant causing the injury, he is not liable.

4. SAME—*Who Are—Questions of Fact.*—Whether two servants of a common master, directly co-operating with each other in a particular business in the same line of employment, or whether their duties are such as to bring them into habitual association, so that they exercise a mutual influence upon each other promotive of proper caution, are questions of fact to be determined by the evidence.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of Will County; the Hon. JOHN SMALL, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the May term, 1898. Affirmed. Opinion filed September 26, 1898. Mr. Justice Crabtree dissenting.

GARNSEY & KNOX and WM. DUFF HAYNIE, attorneys for appellant; E. H. GARY, of counsel.

JOHN W. D'ARCY, attorney for appellee.

MR. JUSTICE WRIGHT delivered the opinion of the court.

This was an action on the case by appellee against appellant for personal injuries sustained by him while in the service of the latter, in consequence of the alleged negligence of appellant for a failure to inform appellee of the dangerous work in which he was engaged, and the alleged negligence of another servant of appellant. The trial was by jury, and resulted in a verdict and judgment against appellant for $7,000, to reverse which this appeal is prosecuted. The principal errors assigned and argued are that the court refused to direct a verdict for appellant at its request; that the verdict is against the weight of the evidence, and the damages are excessive.

It is insisted by counsel for appellant that (1) the injury to appellee was the result of the usual and ordinary risks incident to his employment, which he assumed when he entered the service of appellant, and (2) that his injuries resulted from the negligence of James Bartley, who, it is contended, was a fellow-servant of appellee. Both of these points raise questions of fact, a proper decision of which, we think, will dispose of the case.

Appellant has extensive works at Joliet, where it manufactures steel from iron ore. The ore is first melted in a converter, in which the process of turning to steel takes place, after which the charge, usually about ten tons of molten metal, is turned into a ladle, and from it the metal is drawn from the bottom into iron moulds, thus forming steel billets or ingots; and these moulds, after being capped, are placed upon small cars and sent to the billet mill. The part of the work in which James Bartley was engaged at the time of the accident to appellee was to pour the metal from the ladle into the moulds. It is in evidence, without dispute, that in the melting process, the slag being lighter than the pure metal, arises to the top of the ladle, and that one charge will generally fill six moulds with substantially pure metal. If more than half an inch of slag is permitted to enter the mould, explosion is liable to occur when it is chilled preparatory to uncapping. At the time of the accident to appellee it was his part of the work to intercept the moulds on the way from the converter to the billet mills, and prepare the ingots for stripping. This was done by chilling the moulds with water from a hose and removing the caps. On May 6, 1895, Bartley and appellee were working in their respective capacities above indicated. In filling a charge from the ladle to the moulds there was not enough metal to fill the last mould, and a foot of slag was run to fill the top, to prevent, as Bartley testified, the metal from boiling over. The mould was capped in this condition and sent upon the car with others to the billet mill; and being intercepted by appellee at the usual place for that purpose, and without notice to him of the dangerous quantity of slag in the last mould, he proceeded to chill and uncap them. The last mould exploded with great violence, inflicting serious and permanent injuries upon appellee. Molten slag and metal was showered upon him, producing deep and lasting burns. It appears from the evidence that appellee had been employed to do this work at a former time, and it is reasonable to suppose was cognizant of the danger of explosion from the ordinary quantity of slag that usually

entered into all the moulds, and knew also, as was the fact, that explosions sometimes occurred from such causes. The evidence indicates other slight explosions, but none so violent or destructive as the one in which appellee received his injuries. We believe the foregoing is a fair statement of the facts necessary to an understanding of the points to be decided.

The rule of the law that the servant assumes the usual and ordinary risks of his employment is so well established and elementary that no discussion or citation of authorities need be entered upon. That appellee assumed the risk of explosions that would ordinarily occur, such as were liable to happen from the unavoidable escape from the ladle to the moulds of small quantities of slag, can not well be controverted. This, however, is not the question here presented. It is indisputable from the evidence of Bartley, the pourer, that the quantity of slag put into the mould, the explosion of which injured appellee, was not one of the ordinary incidents of the work, but the slag, for want of metal, was intentionally run into the mould to fill it. This was known by Bartley to be dangerous. Appellee had no actual notice of the extra hazardous condition of the mould, and as has been seen, he only assumed the ordinary risks incident to his employment; nor would ordinary care on his part have revealed the high explosive quality of the mould. Unless, therefore, Bartley was a fellow-servant of appellee, it will be difficult for appellant to avoid liability for the injuries to appellee. The rule in this State is that where one servant is injured by the negligence of another servant where they are directly co-operating with each other in a particular business in the same line of employment, or their duties are such as to bring them into habitual association, so that they may exercise a mutual influence upon each other promotive of proper caution, and the master is guilty of no negligence in employing the servant causing the injury, the master is not liable. I. C. R. R. Co. v. Swisher, 74 Ill. App. 167 and cases cited.

Whether Bartley and appellee were directly co-operating

with each other in a particular business in the same line of employment, or whether their duties were such as to bring them into habitual association, so that they might exercise a mutual influence upon each other promotive of proper caution, are questions of fact to be determined by the evidence. The jury and the trial judge have determined these questions against the appellant; and while this determination is not conclusive in this court, still under a long line of decisions, the verdict, together with the approval of the trial court, is entitled to great weight, and such finding will not be disturbed unless it appears to be against the clear weight of the evidence. We have examined the evidence and feel satisfied the verdict is right as regards these questions.

Bartley was employed by appellant to assist in the process of manufacturing steel, and when he had delivered the product in the moulds in the form of billets or ingots, the line of his employment ended and his duties ceased. He was paid for his service on the basis of tonnage, and not of time employed. It does not appear that Bartley had any relation to or association with any other person or employe after he had poured the metal into the moulds; certainly none with appellee, who was not within sight, with one or two walls of masonry between them. Appellee was employed to assist in the delivery of the finished steel product stripped for use at the billet mill. It is thus plain, it seems to us, that Bartley and appellee were not directly co-operating with each other in a particular business, nor in the same line of employment, nor were their duties such as to bring them into habitual association, nor did they exercise a mutual influence upon each other promotive of proper caution, and were not therefore fellow-servants within the legal definition of that term.

We think the court did not err in refusing the instruction to the jury to find the issues for the appellant nor is the verdict against the weight of the evidence. In view of the serious and permanent injuries to appellee we do not believe the damages are excessive.

It has also been assigned for error that the instruction

given by the court, at the request of appellee, as to fellow-servants, is erroneous and misleading. This assignment of error has not been referred to, nor argued in the brief of counsel for appellant, and must therefore be considered as abandoned.

The judgment of the Circuit Court will be affirmed.

CRABTREE, J., dissenting.